THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RINKY DINK, INC. d/b/a PET STOP and THOM FISCHER, an individual, and KIM KATWIJK, an individual, individually and on behalf of others similarly situated, | CASE NO. C14-0268-JCC |
| | ORDER ENTERING FINAL APPROVAL OF CLASS SETTLEMENT |
| Plaintiffs, | |
| v. | |
| WORLD BUSINESS LENDERS, LLC, | |
| Defendant. | |

This matter comes before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 88) and Motion for an award of Attorney Fees and Costs (Dkt. No. 85). Defendants do not oppose either motion. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motions, CERTIFIES the Settlement Class, and approves the Settlement for the reasons explained herein.

## I.   BACKGROUND

Plaintiffs Rinky Dink, Inc., Thom Fischer, and Kim Katwijk brought this proposed class action suit against Defendant World Business Lenders, LLC ("WBL") for alleged telemarketing. (Dkt. No. 1-1 at 4, 60, and 83.) Plaintiffs sue on their own behalf and as class representatives for

1  others similarly situated. (Dkt. No. 83 at 1.) Rinky Dink, a pet supply store, states that it received

2  a pre-recorded telemarketing call on October 16, 2013 made by or on behalf of Defendant. (*Id.* at

3  5.) Fischer states that on an unspecified date in April 2013, he received a similar pre-recorded

4  telemarketing call made by or on behalf of Defendant on his cell phone. (*Id.* at 6.) Katwijk states

5  that a similar pre-recorded telemarketing call was made to his cell phone on or behalf of

6  Defendant in May 2013. (*Id.*)

7      All Plaintiffs—on behalf of the proposed class—allege that, by using an automatic

8  dialing and announcing device, Defendants violated the Washington Automatic Dialing and

9  Announcing Device Statute ("WADAD"), Rev. Code. Wash. § 80.36.400. (*Id.* at 10.) A violation

10  of the WADAD is a *per se* violation of the Washington Consumer Protection Act ("WCPA"),

11  Rev. Code Wash. § 19.86, *et seq. See* Rev. Code. Wash. § 80.36.400(3). Plaintiffs Fischer and

12  Katwijk—on behalf of the proposed Cell Phone Class—allege that Defendants violated the

13  Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A), by calling their cell

14  phones. (*Id.* at 11–13.)

15      After conducting mediation, the Parties filed a Motion for Preliminary Approval of a

16  Settlement Agreement on December 30, 2015. (Dkt. No. 78.) The Settlement Agreement,

17  executed on December 29, sets the terms and conditions of the Settlement and release of certain

18  claims against Defendant WBL (Dkt. No. 79 at 17–32.) The Court preliminarily approved the

19  Settlement on February 3, 2016, and notice was given to members of the Settlement Class

20  pursuant to that Preliminary Approval Order.

21      The Notice Administrator reached out to members of the Settlement Class through

22  mailing notice packets and postcards. (Dkt. No. 89 at 2–3.) The Notice Administrator also

23  established a website and a toll-free phone number for Settlement Class Members. (*Id.* at 4.) No

24  objections were filed, though two class members chose to opt-out of the class. (*Id.*) As of May 3,

25  2016, Claim Forms were submitted by 2,708 Settlement Class Members. (*Id.*) The Notice

26  Administrator asserts that it was able to provide direct notice to approximately 86 percent of the

1   proposed Settlement Class. (*Id.*at 3–4.) The total Settlement Class therefore consists of 2,708

2   members. In the present motions, Plaintiffs request that the Court: (1) certify the Settlement

3   Class, (2) approve the Settlement, (3) conclude that notice to the Settlement Class was adequate,

4   (4) award Class Counsel's attorney fees of $250,000 and costs of $60,939.74, and (5) approve

5   incentive awards of $10,000 each for Plaintiffs Pet Stop and Fischer and $5,000 for Plaintiff

6   Katwijk. (Dkt. No. 88 at 5.)

7   **II.    DISCUSSION**

8         The Settlement approval procedures take place over three stages. First, the parties present

9   a proposed settlement asking the Court to provide "preliminary approval" for both (a) the

10  settlement class and (b) the settlement terms. *See, e.g., Churchill Vill., L.L.C. v. Gen. Elec.,*

11  361 F.3d 566, 575 (9th Cir. 2004) (discussing the District Court's use of a preliminary approval

12  order). Second, if the court does preliminarily approve the settlement and class, (i) notice is sent

13  to the class describing the terms of the proposed settlement, (ii) class members are given an

14  opportunity to object or opt out, and (iii) the court holds a fairness hearing at which class

15  members may appear and support or object to the settlement. *Id*. Third, taking account of all of

16  the information learned during the aforementioned processes, the court decides whether or not to

17  give final approval to the settlement and class certification. *Id*.

18        At this stage, the Court reviews the Settlement for final approval based on whether it is

19  "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

20  (9th Cir. 1988). In determining whether a settlement is fair, adequate, and free from collusion,

21  courts must consider a number of factors including: (1) a defendant's ability to pay a larger

22  settlement; (2) the strength of the plaintiff's case; (3) the extent of discovery completed and the

23  stage of the proceedings; (4) the risk, expense, complexity, and likely duration of further

24  litigation; (5) the amount offered in settlement; (6) the experience and views of counsel; (7) the

25  reaction of the class members to the proposed settlement; (8) the presence of a governmental

26  participant; (9) whether the attorney fees request is indicative of collusion; and (10) whether

ORDER ENTERING FINAL APPROVAL OF
CLASS SETTLEMENT
PAGE - 3

1  distribution favors certain class members at the expense of others. *See In re Bluetooth Headset*
2  *Products Liability Litigation*, 654 F.3d 935, 946–47 (9th Cir. 2011); *see also Staton v. Boeing*
3  *Co.,* 327 F.3d 938, 974 (9th Cir. 2003); *see also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454,
4  458 (9th Cir. 2000) ("The district court must show that it has explored these factors
5  comprehensively to survive appellate review.").

6       The Court has reviewed and considered all papers filed in support of and in opposition to
7  the Settlement and all exhibits thereto, and held a Final Approval Hearing on May 31, 2016, at
8  which time the Parties and all interested persons were heard in support of and in opposition to
9  the Settlement.

10 **A.     Defendants' Ability to Pay a Larger Settlement**

11      The Court is satisfied that, based on Defendants' financial condition, they are unable to
12 pay a larger settlement amount. (*See* Dkt. No. 79 at 3.) Plaintiffs reviewed WBL's finances,
13 including tax returns, balance sheets, audits, and income statements. (*Id.* at 3–4.) Moreover, the
14 Settlement is the product of extensive negotiations between Plaintiffs and WBL after a more in-
15 depth review of WBL's finances and the scope of the Settlement Class. (*Id.*) Accordingly, the
16 Court finds that sufficient findings have been made such that this factor weighs in favor of
17 settlement approval.

18 **B.     Strength of Plaintiffs' Case**

19      Plaintiffs set forth sufficient, specific reasons that settlement is wise in light of the risk of
20 losing on the merits. (Dkt. No. 88 at 10.) For example, Plaintiffs direct the Court to *Smith v.*
21 *Microsoft*, 2014 WL 323683 (C.D. Cal. Jan. 28, 2014) in which a district court in the Ninth
22 Circuit declined to certify a TCPA class because class members could not be identified clearly
23 based on records similar to those held by WBL. (*Id.*) While the *Smith* case is not binding on this
24 Court, it acknowledges a factual weakness in Plaintiffs' case: that WBL's records were limited to
25 phone numbers, not names. (*Id.*) And, as Plaintiffs point out, a recent U.S. Supreme Court case
26 may raise issues about the nature of Plaintiffs' injuries. (*Id.*) (citing *Spokeo, Inc. v. Robbins*,

ORDER ENTERING FINAL APPROVAL OF
CLASS SETTLEMENT
PAGE - 4

1   2016 WL 2842447, at *6) (May 16, 2016). However, unlike other TCPA cases, in this instance

2   there were unlikely to be individualized issues of consent at trial. (*Id.*) The Court is satisfied that

3   Settlement Class Members may avoid risks and additional obstacles pursuant to this

4   Settlement—particularly considering WBL's financial condition—and that this factor weighs in

5   favor of final approval.

6   **C.      Extent of Discovery/Stage of Proceedings**

7          A key inquiry is whether the parties had enough information to make an informed

8   decision about the strength of their cases and the wisdom of settlement. *See In re Mego,* 213 F.3d

9   at 458. The presence of substantial formal discovery is an indicator that the parties were

10  informed regarding the wisdom of settlement and engaged in arms-length bargaining. *Id.* Here,

11  the parties conducted extensive discovery prior to mediation: Plaintiffs retained an expert and

12  analyzed a large number of WBL's records. (*See* Dkt. No. 79 at 3.) This factor weighs in favor of

13  settlement approval.

14  **D.      The Risk, Expense, Complexity, and Duration of Further Litigation**

15         Additional depositions, expert work, and motion work would have been necessary before

16  trial in this case, including summary judgment motions. (Dkt. No. 88 at 11.) This factor weighs

17  in favor of settlement approval.

18  **E.      The Amount Offered in Settlement**

19         All told, each eligible Settlement Class Member is likely to receive approximately $150

20  pursuant to this Settlement. (Dkt. No. 88 at 12.) Settlement Class Members with valid claims as

21  members of both the Washington Class and the Cell Class, as defined below, are entitled to a

22  double pro rata share of the fund, or approximately $300. (*Id.* at 11–12.) Given the award

23  amount's similarity to other TCPA class action settlements, as well as the benefit to Settlement

24  Class Members of avoiding individual litigation, consideration of this factor weighs in favor of

25  settlement approval. *See, e.g., Rinky Dink v. Elec. Merchant Sys., et al.*, C13-1347-JCC at Dkt.

26  No. 151 (W.D. Wash. Apr. 19, 2016) (approving awards in a TCPA action of approximately $97

1   per class member); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7

2   (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class

3   members estimated to receive $40); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No.

4   96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne*

5   *Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012)

6   (claimants received $40 each)*; Desai v. ADT Sec. Servs., Inc.*, Case No. 1:11-cv-01925 (Dkt. No.

7   229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100).

8   **F.      The Experience and Views of Counsel**

9          Plaintiffs' Counsel has substantial experience prosecuting class actions relating to

10   consumer rights, including TCPA actions. (Dkt. No. 79 at 5–11.) Counsel on both sides—as

11   demonstrated by Defendant's non-opposition to these motions—indicate that this is a fair and

12   reasonable settlement in light of the uncertainties of litigation. This factor weighs in favor of

13   settlement approval.

14   **G.      Reaction of Class Members**

15          The overwhelmingly positive reaction of class members further supports the entry of final

16   approval. Out of 238,263 Settlement Class Members, no objections have been received and only

17   two members opted out of the class. (Dkt. No. 89 at 4.) 2,708 Settlement Class Members

18   submitted a claim form. (*Id.*) While one of the class members who chose to opt out did so while

19   providing a strongly-worded critique of the nature of class actions, the Court is not swayed by

20   this single piece of negative feedback. Having opted out of the class, the complainant lacks

21   standing to object to the terms of the settlement. *See Glasser v. Volkswagen of Am., Inc.*, 645

22   F.3d 1084, 1088–89 (9th Cir. 2011). This factor weighs strongly in favor of final approval.

23   **H.      Presence of a Government Participant**

24          While there is no governmental party to this litigation, the settlement notice has been

25   provided to the Attorneys General of all fifty states, the District of Columbia, and each of the

26

1   five recognized U.S. Territories. *See* 28 U.S.C. § 1715, Dkt. No. 89 at 2. This factor weighs in

2   favor of final settlement approval.

3   **I.      Attorney Fees**

4           Class Counsel seeks attorney fees in the amount of $250,000. This represents 25 percent

5   of the non-reversionary settlement fund. (Dkt. No. 85 at 9.) This amount is reasonable. Under

6   both Washington and Ninth Circuit law, 25 percent of the common fund recovery is a

7   "benchmark" that should be adjusted, or replaced by a lodestar calculation, only when special

8   circumstances indicate that the percentage recovery would be either too small or too large in

9   light of the hours devoted to the case or other relevant factors. *Bowles*, 847 P.2d at 450–51 (a

10  reasonable percentage of recovery is "often in the range of 20 to 30 percent," and in common

11  fund cases "the benchmark award is 25 percent of the recovery obtained"); *see also Six Mexican*

12  *Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (25 percent is a

13  benchmark); *see also* 3 NEWBERG ON CLASS ACTIONS § 14.03 (20–30 percent is usual common

14  fund award). There are no circumstances here that would warrant departing from the benchmark

15  25 percent recovery. *Arizona Citrus Growers*, 904 F.2d at 1311; *see also Vizcaino*, 290 F.3d at

16  1047–50 (discussing factors such as the results achieved, risk of litigation, complexity of issues,

17  hours worked on the case, counsel's hourly rate, and the contingent nature of fees).

18          Counsel have achieved a favorable result for the settlement class, conducted considerable

19  discovery while avoiding unnecessary litigation, represented the Plaintiff Class's interests

20  through mediation, and spent approximately 851.4 hours of Counsel's time. (Dkt. No. 85.)

21          Importantly, the lodestar cross-check analysis lends support for this figure. Calculation of

22  the lodestar, which measures the lawyers' investment of time in the litigation, provides a check

23  on the reasonableness of the percentage award. *In re Bluetooth*, 645 F.3d at 944. If the attorneys

24  assigned to this case had been working at an hourly basis, based on their ordinary billable rate,

25  they would have made $387,145. (Dkt. No. 85 at 14.) In other words, the requested fee of

26  $250,000 is actually a "negative multiplier" of the lodestar. This is especially reasonable in light

ORDER ENTERING FINAL APPROVAL OF
CLASS SETTLEMENT
PAGE - 7

1    of what courts ordinarily approve. *See* 4 NEWBERG ON CLASS ACTIONS § 14.7 (courts typically

2    approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the

3    multiplier of 1.9 is comparable to multipliers used by the courts"); *see also In re Prudential Ins.*

4    *Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)

5    ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the

6    lodestar method is applied.") (quoting Newberg). The Court thus finds that the attorneys' fees

7    requested in this case are reasonable.

8       The remaining fee requests are likewise reasonable: $60,939.74 in out-of-pocket

9    expenses and $25,000 in service awards: $10,000 each for Plaintiffs Rinky Dink and Fischer, and

10   $5,000 for Plaintiff Katwijk. (Dkt. No. 85 at 22–24.) Mr. Katwijk became a named Plaintiff later

11   in the litigation and was not deposed, thus the smaller service award proposed for his

12   participation in the ligitation.

13   **J.**     **Distribution of Settlement**

14       The Service Award for each named Plaintiff does not constitute an unfair distribution of

15   the settlement fund. Accordingly, this factor weighs in favor of entry of final approval.

16   **III.**    **CONCLUSION**

17       Upon consideration of all of the above, the Court finds that the Settlement is fair,

18   adequate, and reasonable in light of the factors set forth in *In re Bluetooth Headset Prods. Liab.*

19   *Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011).

20       THEREFORE, the following is HEREBY ORDERED:

21       1.     This Court has jurisdiction over the subject matter of this Action and personal

22   jurisdiction over the Parties and the Settlement Class.

23       2.     The definitions and provisions of the Agreement are incorporated in this Order as

24   though fully set forth herein.

25       3.     Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for the

26   purposes of Settlement only, the Settlement Class is certified as follows:

1
2
3
4
5
6
7

> All persons or entities all persons and entities who, between and
> including December 20, 2009 and the Execution Date: (a)
> Received one or more telephone calls made by or on behalf of
> WBL, on a telephone number with area codes 206, 253, 360, 425,
> or 509, using an automatic dialing and announcing device, when
> such a call included a prerecorded message containing a
> commercial solicitation, ("Washington Subclass"); or (b) Received
> one or more telephone calls made by or on behalf of WBL, on their
> cellular telephones, using an automatic telephone dialing system
> and/or an artificial or prerecorded voice ("Cellular Subclass").

8        4.      For purposes of settlement only, Plaintiffs are hereby appointed "Class

9    Representatives."

10       5.      For purposes of settlement only, the attorneys at Terrell Marshall Law Group

11   PLLC and Williamson & Williams, are hereby appointed as Class Counsel.

12       6.      In the event that the Settlement terminates for any reason, the certification of the

13   Settlement Class shall be automatically vacated, null and void, and this Action shall revert to its

14   status immediately prior to the execution of the Agreement.

15       7.      This Court finds that the Class Notice given to members of the Settlement Class

16   pursuant to the terms of the Agreement fully and accurately informed such members of all

17   material elements of this settlement and constituted valid, sufficient, and due notice to all such

18   members.  The Class Notice fully complied with due process, Rule 23 of the Federal Rules of

19   Civil Procedure, and with all other applicable law.  Accordingly, this Court makes final the

20   conditional certification set forth in the Preliminary Approval Order.

21       8.      Settlement Class Members who timely submitted valid requests for exclusion are

22   excluded from the Settlement Class and are not bound by this Order and Judgment. Grill King

23   Korean Barbeque and Midtown Therapy timely submitted valid requests for exclusion and are

24   not bound by this Settlement Order and Final Judgment.

25       9.      The Court finally approves this Settlement, and finds that it is fair, reasonable,

26   and adequate.

ORDER ENTERING FINAL APPROVAL OF
CLASS SETTLEMENT
PAGE - 9

10.     The Parties, their counsel, and the Claims Administrator shall fulfill their obligations and duties under the Agreement.

11.     The Court dismisses with prejudice this Action, the Released Claims, and the Released Parties, and adjudges that the Released Claims are released against the Released Parties.

12.     The Court adjudges that Plaintiffs and the Settlement Class Members are deemed to have fully, finally, completely, and forever released, relinquished, and discharged the Released Claims against the Released Parties.

13.     Plaintiffs and the Settlement Class Members are permanently enjoined and barred from asserting, initiating, prosecuting, or continuing any of the Released Claims against the Released Parties.

14.     By operation of this judgment, the Representative Plaintiffs and Defendant expressly waive, and each Settlement Class Member is deemed to have waived, any and all claims, rights, or benefits they may have under California Civil Code § 1542 and any similar federal or state law, right, rule, or legal principle that may apply.  California Civil Code § 1542 provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

15.     The Claims Administrator completed the delivery of Class Notice according to the terms of the Agreement.  The Class Notice given by the Claims Administrator to the Settlement Class, which set forth the principal terms of the Agreement and other matters, was the best practicable notice under the circumstances.  The notice program prescribed by the Agreement was reasonable and provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to all parties entitled to such Class Notice.  The Class Notice given to members of the Class satisfied the requirements of

Federal Rule of Civil Procedure 23 and the requirements of constitutional due process. The Class Notice was reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of this Action, all material elements of the settlement, and their opportunity to exclude themselves from, object to, or comment on the settlement and appear at the final fairness hearing. The Court has afforded a full opportunity to all Settlement Class Members to be heard. Accordingly, the Court determines that all members of the Settlement Class, except those who timely excluded themselves from the Settlement Class, are bound by this Judgment and Final Order.

16.     Within ten (10) days after the filing of the proposed Agreement in this Court, a notice of the proposed Settlement was served upon the appropriate state official of each State in which a Settlement Class Member resides and upon the Attorney General of the United States. The Court finds that the Class Notice provided satisfied the requirements of 28 U.S.C. § 1715(b) and that more than ninety (90) days have elapsed since the required Class Notice was provided, as required by 28 U.S.C. § 1715(d).

17.     The Court approves payment of attorneys' fees and costs to Class Counsel in the amount of $250,000 in fees and $60,939.74 in out-of-pocket litigation costs. These amounts shall be paid from the Settlement Fund pursuant to the terms of the Agreement. The Court finds these amounts to be appropriate and reasonable in light of the work performed by Class Counsel and the benefits obtained by the Settlement Class Members. In addition, the Court finds that the Agreement was negotiated at arms' length and without collusion.

18.     The Court approves payment of service awards to Plaintiffs in the amount of $10,000 each to Plaintiff Pet Stop and Plaintiff Fischer and $5,000 to Plaintiff Katwijk. This amount shall be paid from the Settlement Fund pursuant to the terms of the Agreement.

19.     Neither this Final Judgment nor the Agreement is an admission or concession by Defendant of the validity of any claims or of any liability or wrongdoing or of any violation of law. This Final Judgment and the Agreement do not constitute a concession and shall not be

1  used as an admission or indication of any wrongdoing, fault or omission by Defendant or any

2  other person in connection with any transaction, event or occurrence, and neither this Final

3  Judgment nor the Agreement nor any related documents in this proceeding, nor any reports or

4  accounts thereof, shall be offered or received in evidence in any civil, criminal, or administrative

5  action or proceeding, other than such proceedings as may be necessary to consummate or enforce

6  this Final Judgment, the Agreement, and all releases given thereunder, or to establish the

7  affirmative defenses of *res judicata* or collateral estoppel barring the pursuit of claims released in

8  the Agreement.  This Settlement Order and Final Judgment also does not constitute any opinion

9  or position of this Court as to the merits of the claims and defenses related to this Action.

10      20.    If Final Approval does not occur, the parties shall be returned to the status quo ex

11  ante, for all litigation purposes, as if no settlement had been negotiated or entered into and thus

12  this Settlement Order and Final Judgment and all other findings or stipulations regarding the

13  Settlement, including but not limited to, certification of the Settlement Class shall be

14  automatically void, vacated, and treated as if never filed.

15      21.    This Court retains jurisdiction to consider all further matters arising out of or

16  connected with the Settlement, including the implementation and enforcement of the Agreement.

17      22.    There were no objections to the settlement.  Thus, the Court finds that no

18  justifiable reason exists for delaying entry of this Settlement Order and Final Judgment.

19      THEREFORE, the Clerk of the Court is HEREBY ORDERED to enter this Final Order

20  of Judgment and Dismissal with Prejudice. For the foregoing reasons, Plaintiff's motions for

21  final approval and attorney fees (Dkt. Nos. 85 and 88) are GRANTED.

22  //

23  //

24  //

25  //

26  //

1    DATED this 31 day of May 2016.

2

3

4

5

6

7                                         John C. Coughenour
8                                         UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ENTERING FINAL APPROVAL OF
CLASS SETTLEMENT
PAGE - 13